IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SNJEZANA JELACA BAGIC, *DDS*,

    Plaintiff,                    18cv0511
                                    ELECTRONICALLY FILED

        v.

UNIVERSITY OF PITTSBURGH, and
BERNARD J. COSTELLO
*DMD, MD, individually, and in his official
capacity as Associate Dean for Faculty Affairs
of the University of Pittsburgh School of
Dental Medicine*,

    Defendants.


**MEMORANDUM OPINION RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, DOC. NO. 22**

Plaintiff, Dr. Snjezana Jelaca Bagic, DDS, ("Plaintiff" or "Dr. Bagic"), initiated this action against Defendants University of Pittsburgh ("the University") and Bernard J. Costello, DMD, MD, ("Dr. Costello"), the Associate Dean for Faculty Affairs of the University of Pittsburgh School of Dental Medicine, following her termination from the University on April 27, 2016. The Court previously granted Defendant's Motion to Dismiss Dr. Bagic's initial complaint, *see* Doc. No. 14, and Defendant's now move to dismiss Dr. Bagic's Amended Complaint, Doc. No. 16, pursuant to Fed. R. Civ. Pro. 12(b)(6). Doc. No. 22.

In her Amended Complaint, Dr. Bagic asserts that she was terminated from the University due to her Croatian ethnicity, following an investigation by Dr. Costello regarding allegations that she had threatened to kill a coworker. Doc. No. 16. Dr. Bagic further asserts that the Chancellor reviewed the investigation by Dr. Costello, found that it was flawed and that

Bagic's termination was unreasonable, but still the University refused to reinstate her employment due to her Croatian ethnicity. Doc. No. 16.

**I. Standard of Review - Rule 12(b)(6)**

Under Rule 12(b)(6), a Complaint must be dismissed for "failure to state a claim upon which relief can be granted." Detailed factual pleading is not required – Rule 8(a)(2) calls for a "short and plain statement of the claim showing that the pleader is entitled to relief" – but a Complaint must set forth sufficient factual allegations that, taken as true, set forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require a showing of probability that a claim has merit, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), but it does require that a pleading show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Determining the plausibility of an alleged claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d

2

114, 118 (3d Cir. 2013); *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (In reference to third step, "where there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.").

When adjudicating a Motion to Dismiss for failure to state a claim, the Court must view all of the allegations and facts in the Complaint in the light most favorable to the plaintiff, and must grant the plaintiff the benefit of all reasonable inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. See *Reuben v. U.S. Airways, Inc.*, 500 F. App'x 103, 104 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that District Courts "must accept all of the Complaint's well-pleaded facts as true, but may disregard any legal conclusions"). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler,* 578 F.3d at 212.

In short, a Motion to Dismiss should be granted if a party fails to allege facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

3

**II. Discussion**

The Court has undertaken a thorough review of the Plaintiff's Amended Complaint, doc. No. 16, first taking note of the elements that the Plaintiff must plead to state a claim. *Iqbal*, 556 U.S. at 675. A Plaintiff establishes a prima facie case of purposeful discrimination under Section 1981 by showing "(1) that (s)he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in Section 1981, including the right to make and enforce contracts." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002).

As Plaintiff correctly argues, she meets the first and third elements of a claim of purposeful discrimination by establishing that she is of Croatian ethnicity and that her contract with the University was terminated and not renewed. Doc. No. 32. However, the Court does not find that Plaintiff has set forth sufficient allegations, beyond mere conclusory and speculative statements, that her Croatian ethnicity was the basis for the University's actions.[1]

Plaintiff's Amended Complaint, particularly the allegations contained in the many subparts of paragraph 55, heavily referenced statements and documents that were evidence included in the University's internal review of Dr. Bagic's termination. Doc. No. 16. Defendant submitted several pages of transcript from the University's hearing, as well as the handwritten notes referenced in the Amended Complaint. Doc. No. 23 (and exhibits). Because the testimony and documents were referenced by Plaintiff in her Amended Complaint, the Court has reviewed those transcripts and documents and has considered them in ruling upon this motion. *See Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co.*, 768 F.3d 284, 290-91 (3d

---

[1] Because the Court has found that Plaintiff has failed to state a claim of purposeful discrimination, the Court has not considered the other arguments raised by Defendant regarding whether Dr. Costello is a state actor and whether Plaintiff's Amended Complaint is time-barred.

Cir. 2014) (documents referenced within a complaint that are central to the claim are reviewable on a motion to dismiss).

Plaintiff was terminated from her contract with the University after allegedly threatening to kill a colleague about whom she had made complaints. Doc. No. 16. In the subparts of paragraph 55 of her Amended Complaint, Plaintiff attributes statements and "conclusions" to Dr. Costello and other University officials that her Croatian ethnicity, and her experience "on the front lines" of the Patriotic War in Croatia in the early 1990s, made her a threat to her colleagues and substantiated the report that she had threatened to kill a colleague. Doc. No. 16, ¶ 55.

A review of the transcripts and handwritten notes references in paragraph 55 shows that Plaintiff's allegations in the Amended Complaint are wholly unsupported by the testimony and notes. Doc. Nos. 23-1 – 23-5. In Plaintiff's recorded testimony, in fact, she admits that she told Dr. Costello that she had threatened her colleague.[2]

> A: . . . He said did you threaten? I said, yes, I did.
>
> Q: Now, let me interrupt you. Did he specifically ask you –
>
> A: Dr. Costello.
>
> Q: Did he specifically ask you if you threatened to kill Dr. Noonan?
>
> A: No, no, no. Did you threaten faculty. I said yes, I did. And then throughout conversation – you know, like it was just something in between. So, again, he said did you threaten in any way – did you threaten – but the threaten was, you know. And I said, yes, and, you know. Just to let you know, I did it twice.

---

[2] Viewing this sworn testimony of the Plaintiff in the light most favorable to Plaintiff, it seems there may have been a misunderstanding when Plaintiff was being questioned by Dr. Costello, and that Plaintiff may have been trying to explain that her "threat" towards Dr. Noonan was a threat to write a letter of complaint about him. However, Plaintiff's testimony about the substance of her conversation with Dr. Costello was consistent with Dr. Costello's recollections of the same conversation - - and it is clear that they discussed Plaintiff's participation in the Croatian War and her experiences killing people in combat, and it is also clear that Plaintiff told Dr. Costello several times that she had "threatened" Dr. Noonan, even if it is somewhat unclear what the specific threat was. Under those circumstances, the Court cannot find that Dr. Costello's actions in recommending the termination of Plaintiff's contract were the result of purposeful discrimination.

> Q: Now, did Dr. Costello ask you anything about killing at all?
>
> A: That is next thing that is coming up. So now he start asking about specifics. He said is there – was there any conversation or any words mentioning killing and war and, you know. Unlike Dr. Noonan, who knew that I was in Patriotic War, Dr. Costello met me first time, so I started to give him, you know, like the context in which those words were mentioning between two of us. And I said, you know, Dr. Costello, I was on the front line, unfortunately, in – I had to kill in order to survive and to protect others. And I'm proud what I have done. I would do it again.
>
> Q: And what does Dr. Costello then say?
>
> A: So – and then he, again, asked, like, did you threaten. I said just threaten, I said yes, I did.

[Doc. No. 23-2](#).

Plaintiff's experience in the Croatian war was a subject of the investigation regarding her alleged threat towards a colleague, because the colleague had reported that Plaintiff told him that she had killed people in the war during the same conversation in which she allegedly threatened to kill him. This is consistent with her own testimony and with the testimony of Dr. Costello.

> Q: But there's been some mention that, I think it was during this meeting, that there was some discussion about the war. Did that happen in this meeting?
>
> A: Yes. I asked that specific question, you know, if there was a mention of that because [Dr. Noonan] had brought it up during the interaction and the conference room between Dr. Bagic and Dr. Noonan; he had mentioned that she claimed to have killed before, she had been on the front line, she had been in war. And he took this to mean that she was capable of killing him, that she had the wherewithal to do that. And as I mentioned, visibly shook him, he was really bothered by it. I felt the need to try to understand that a little bit and I asked that in an open-ended way in the conversation with Dr. Bagic.

[Doc. No. 23-1](#).

The handwritten notes Plaintiff referenced in her Amended Complaint are also consistent with the sworn testimony. Viewed on their own, as Plaintiff presents them in the Amended

Complaint (with speculative and conclusory statements attributing presumptions to Dr. Costello and others), the references to her service "on the front lines" in the Croatian war seemingly would indicate a bias against her on the basis of her ethnicity, but viewed in context with the sworn testimony of Plaintiff and Dr. Costello, the notes seem to merely be references to the actual subjects discussed in their meeting.  Doc. Nos. 23-1 – 23-5.

Keeping in mind that the Plaintiff must set forth some allegations "to raise a reasonable expectation that discovery will reveal evidence" of the necessary elements Plaintiff must ultimately prove at trial to survive a motion to dismiss, the Court cannot find that Plaintiff has done so under these circumstances.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-89 (3d Cir. 2016) (reviewing the sufficiency of a complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").  This case has already been developed through the University's internal review.[3]  The testimony and documents do not support the allegations as stated in Plaintiff's Amended Complaint.

### III.    Conclusion

Accordingly, for the reasons set forth, Defendants' Motion to Dismiss Plaintiff's Amended Complaint, doc. no. 22, will be GRANTED.  An appropriate Order dismissing the case shall follow.  This case will be marked CLOSED.


                                                  s/Arthur J. Schwab_____
                                                  Arthur J. Schwab
                                                  United States District Judge


cc:     All ECF Registered Counsel of Record

---

[3] Plaintiff also has two pending cases against the University and other defendants in state court related to this matter. *See* Doc. No. 29 and Doc. No. 30.